EXHIBIT A

*United States v. Kurt Williams and Gearhead Properties, LC, Case* No. 3:25-cv-00007
(S.D. Iowa)

SETTLEMENT AGREEMENT
between
THE UNITED STATES OF AMERICA
and
KURT WILLIAMS AND GEARHEAD PROPERTIES, LC.

I.   INTRODUCTION

1.   This action was filed on January 17, 2025, by Plaintiff United States of America to enforce Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601-3631 ("Fair Housing Act," "FHA," or "the Act").

2.   In its Complaint, the United States alleges that Kurt Williams and Gearhead Properties, LC violated the FHA by discriminating against tenants on the basis of sex in the rental of dwellings that he owns or manages in Davenport, Iowa. Specifically, the United States alleges that for at least the last fifteen years, since 2010, Defendant Kurt Williams, in his capacity as owner or manager of these properties, engaged in unwelcome and severe or pervasive sexual harassment of and retaliation against numerous female tenants. Defendant's acts of sexual harassment included, but were not limited to:

- Making unwelcome sexual comments and sexual advances to female tenants;
- Sending unwanted sexual text messages, sexual photos, and exposing his genitals to female tenants;
- Offering to grant tangible housing benefits – such as making repairs and/or reducing the rent or security deposit and overlooking or excusing late or unpaid rent in exchange for sex or sex acts; and

1

- Retaliating by taking adverse housing actions, such as initiating eviction actions, against female tenants who objected to and/or refused sexual advances.

3. The United States alleges that the conduct described above constitutes a pattern or practice of resistance to the full enjoyment of rights granted by the FHA and a denial to a group of persons rights granted by the FHA, which denial raises an issue of general public importance.

4. The United States further alleges that Defendant Gearhead Properties, LC is liable for the discriminatory actions and conduct of Defendant Kurt Williams because the discriminatory incidents occurred while Defendant Kurt Williams was exercising his authority as an agent of Defendant Gearhead Properties, LC.

5. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. § 3614(a).

6. The Parties have agreed that the claims against Defendants should be resolved without further litigation. Therefore, the Parties consent to this Settlement Agreement (the "Agreement"), as shown by the signatures below.

7. In consideration of, and consistent with, the terms of this Agreement and the promises made by the Parties, the Parties will move jointly for dismissal of the civil action with prejudice, consistent with the terms set forth in Paragraph 37. The Parties agree that this consideration is adequate and sufficient. THEREFORE, the Parties, through their authorized representatives, stipulate and agree as follows:

## II. PROHIBITION AGAINST DISCRIMINATION AND RETALIATION UNDER THE FHA

8. All Defendants, their officers, agents, employees, transferees, successors, heirs and assigns, and all other persons or entities acting for or with them, are prohibited from directly or indirectly:

    a. Refusing to sell or rent a dwelling,[1] refusing to negotiate for the sale or rental of a dwelling, or otherwise making unavailable or denying a dwelling, to any person because of sex;

    b. Discriminating against any person in the terms, conditions, or privileges of the sale or rental of a dwelling, or in the provision of services or facilities in connection with a dwelling, because of sex;

    c. Making any statement, oral or written, in connection with the sale or rental of a dwelling that indicates any preference, limitation, or discrimination, or an intent to prefer, limit, or discriminate, on the basis of sex; and

    d. Coercing, intimidating, threatening, or interfering with any person in the exercise or enjoyment of, or because they have exercised or enjoyed—or aided or encouraged any other person in exercising or enjoying—any right granted or protected by the Fair Housing Act, including by retaliating against any person exercising their rights under this Agreement.

## III. PROHIBITION AGAINST CONTACT WITH HARMED INDIVIDUALS, WITNESSES, AND THEIR FAMILY MEMBERS

    9. All Defendants are permanently prohibited from engaging in contact or communications, either directly or indirectly, with: (1) any person the United States has identified as harmed by Defendants' conduct; (2) any person the United States has identified as a potential witness to the unlawful conduct alleged in this lawsuit; and (3) any person whom Defendants know or believe to be a family member or close relation of any of the individuals the United States has identified as harmed by Defendants' actions or witnesses to Defendants' unlawful conduct.

---

[1] The term "dwelling" has the meaning set out in the Fair Housing Act, 42 U.S.C. §3602(b).

Case 3:25-cv-00007-RGE-HCA   Document 36-1   Filed 01/08/26   Page 4 of 17

10. In the event that Defendants inadvertently or unintentionally make any contact with any individual within the categories identified above, they will immediately discontinue the contact or communication and take all reasonable steps to avoid any further contact or communication and will notify counsel for the United States of such contact within 48 hours of the contact and detail the circumstances.

11. Defendants have represented to the United States that, as of the date of execution of this agreement, they are out of the residential rental property business and that they do not have any ownership interest, either jointly or individually, in any of the Subject Properties that were at issue in this lawsuit.[2]

## IV. PROHIBITION AGAINST PROPERTY MANAGEMENT, PRESENCE AT SUBJECT PROPERTIES, AND CONTACT WITH TENANTS

12. Defendants are permanently prohibited from managing residential rental properties, as set forth herein. They are permanently prohibited from directly or indirectly performing, at any residential rental property, any property management responsibilities, including but not limited to having contact or communications with tenants or prospective tenants; showing and advertising dwelling units; processing rental applications; performing or supervising repairs or maintenance; collecting rent and/or fees; entering or inspecting any dwelling units; and terminating tenancies.[3]

---

[2] "Subject Property" or "Subject Properties" means any residential rental property Defendants own or manage, or come to own or manage, in full or in part.

[3] "Contact and communications" includes physical contact, verbal contact, telephone calls, e-mails, faxes, written communications, text or instant messages, contact through social media, or other communications made directly or through third parties.

4

13. Defendants are permanently prohibited from entering the premises, or being within 50 feet, of any of the Subject Properties. This includes, but is not limited to, the dwelling units, communal spaces, yards, parking areas, garages, and leasing offices.

14. Defendant Gearhead Properties, LC will not purposefully or knowingly direct or permit Defendant Kurt Williams to engage in any of the conduct described in Paragraphs 12 or 13 above.

## V. ACQUISITION OR TRANSFER OF INTEREST IN RESIDENTIAL RENTAL PROPERTIES

15. If any Defendant acquires any management, ownership, financial, controlling, or other interest in any residential rental property, the property is a Subject Property and will be subject to the provisions of this Agreement. During the term of this Agreement, within 7 days of acquiring such an interest, Defendants must provide written notification to the United States, identifying the property and the nature of the interest acquired, and provide the United States with copies of any documents memorializing the transfer or creation of the interest in the property.

## VI. MONETARY DAMAGES FOR AGGRIEVED PERSONS

16. Within 15 days of the effective date of this Agreement, Defendants will deposit in an interest-bearing escrow account the total sum of $315,000, for the sole purpose of compensating Aggrieved Persons. This money will be referred to as "the Settlement Fund."

17. Any interest accruing to the Settlement Fund will become a part of the Settlement Fund and utilized as set forth in this Agreement.

18. Defendants will be solely responsible for any taxes assessed or owed on any interest earned on money deposited into the Settlement Fund. Defendants will also be solely responsible for any costs for opening or maintaining the account.

19. The United States will investigate the claims of any potential Aggrieved Persons and determine if they are Aggrieved Persons harmed in violation of the Fair Housing Act. The United States has obtained or will obtain sworn statements from each person it determines to be an Aggrieved Person setting forth the factual basis of their claim. Within 60 days from the effective date of this Agreement, the United States will inform the Defendants in writing of its determinations as to which individuals are Aggrieved Persons and an appropriate amount of damages (plus accrued interest) that should be paid to each.

20. Nothing in this Agreement precludes the United States from making efforts to locate and provide notice to individuals who may be entitled to relief under this Agreement.

21. The United States' determinations with respect to Aggrieved Persons will be final. Defendants will not contest the United States' determinations in this or any other proceeding.

22. The entire Settlement Fund, including any accrued interest, will be distributed to Aggrieved Persons identified by the United States. The Parties expect that there will be no monies remaining in the Settlement Fund after such distribution.

23. Within 10 days of receiving the United States' determinations, Defendants will deliver to counsel for the United States separate checks payable to each Aggrieved Person for the designated amount by overnight delivery to:

> Chief
> c/o Charla Jackson
> Housing and Civil Enforcement Section
> Civil Rights Division
> United States Department of Justice
> 150 M St. NE, 8th Floor

Washington, D.C. 20002
Re: DJ# 175-28-42

24.     When counsel for the United States has received a check from Defendants for an Aggrieved Person and received a signed release in the form of Appendix A from the Aggrieved Person, counsel for the United States will deliver the check to the Aggrieved Person and a copy of the signed release to counsel for Defendants. No Aggrieved Person will receive a check until they have executed and delivered the release at Appendix A.

25.     If any check sent to the United States is not cashed, deposited, or otherwise negotiated within six months of its issue, Defendants agree to cancel any such check and issue one or more new checks as directed by the United States, either for the benefit of the same individual or of other Aggrieved Persons.

26.     The compensation required to be paid to the Aggrieved Persons under Paragraph 16 is a debt within the meaning of 11 U.S.C. § 523(a)(6). Accordingly, Defendants will not seek to discharge any part of this debt in bankruptcy.

27.     Within five business days of establishing the Settlement Fund in accordance with Paragraph 16, Defendants will submit proof to the United States that the account has been established, that it is an interest-bearing account, and that the funds were deposited.

## VII.    ADDITIONAL RELIEF FOR AGGRIEVED PERSONS

28.     If Defendants initiated any proceeding related to the tenancy of any Aggrieved Person, including any proceeding to evict, otherwise terminate tenancy, or seek damages, the United States will determine whether such action was retaliatory or otherwise in violation of the Fair Housing Act. To make this determination, the United States may request documents and information from Defendants relevant to such proceedings. Defendants will provide the requested documents and information to the United States within 15 days of the request.

29.     If the United States determines any such proceedings were retaliatory or otherwise unlawful under the Fair Housing Act, it will inform Defendants. Defendants will not contest the United States' determination. Within 10 days of receiving the United States' determination, Defendants will:

    a.  Request that all three major credit bureaus (Equifax, Experian, and TransUnion) delete any information attributable to the proceedings regarding the Aggrieved Persons and any co-tenant, and provide the credit bureaus with the information necessary for them to do so;

    b.  Move the appropriate courts to dismiss any pending proceedings or vacate any judgment obtained; and

    c.  Deliver to counsel for the United States, via email, a letter in the form of Appendix B for each relevant Aggrieved Person.

30.     Defendants will maintain all records relating to the actions taken in accordance with Section VII.

31.     Within ten (10) business days of taking the remedial actions related to retaliatory or unlawful eviction, or other tenant termination proceedings, in accordance with this Section, Defendants will send to the United States copies of the documents demonstrating compliance with those requirements.

## VIII.  CIVIL PENALTY

32.     Within 10 days of the effective date of this Agreement, Defendants will pay $10,000 to the United States Treasury as a civil penalty under 42 U.S.C. § 3614(d)(1)(C) to vindicate the public interest. The payment will be in the form of an electronic fund transfer in accordance with written instructions to be provided by the United States.

33. The civil penalty required to be paid to the United States Treasury under the preceding Paragraph is a debt for a fine, penalty, or forfeiture payable to and for the benefit of the United States within the meaning of 11 U.S.C. § 523(a)(7) and is not compensation for actual pecuniary loss. Accordingly, Defendants will not seek to discharge any part of this debt in bankruptcy.

## IX. DEFENDANTS' REPORTING REQUIREMENTS

34. Defendants will provide to the United States[4] notification and documentation of the following events no later than 10 days after they occur:

    a. Any information indicating that any Defendant, or any of their agents or employees, may be in violation of this Agreement or the Fair Housing Act; and

    b. Any written or oral complaint against any Defendant, or any of Defendants' agents or employees, regarding discrimination, harassment, retaliation, or other violation of this Agreement.

        i. Notification will include the full details of the complaint, including the complainant's name, address, and telephone number.

        ii. Defendants will also provide the United States all information it may request concerning any complaints, and, within 15 days of receiving the complaint, will inform the United States of any resolution.

        iii. Within 90 days of the entry of this Agreement and every six months thereafter, Defendants will deliver to the United States a compliance

---

[4] All documents or other communications required by the Agreement will be sent by email to Charla Jackson at charla.jackson@usdoj.gov and hce.compliance@usdoj.gov, or as otherwise directed by the United States. Defendants will confirm with the United States that the required documents and communications have been received.

report containing information about Defendants' compliance with the terms of this Agreement during the preceding reporting period. Written and sworn verification by Defendants and that Defendants have reported all acquisitions or transfers of interest in residential rental properties as required by Section V.

## X. DOCUMENT PRESERVATION, PRODUCTION, AND RECORD KEEPING

35. Defendants will preserve all records that are the source of, contain, or relate to any of the information pertinent to their obligations under this Agreement. Upon reasonable notice, representatives of the United States will be permitted to inspect and copy all such records at any and all reasonable times or, upon request by the United States, Defendant will provide copies of such documents.

36. Upon reasonable notice, Defendants will produce or permit the United States to make copies of any rental or tenancy records, or any other records in the possession, custody, or control of Defendants, that Defendants have not previously provided and that the United States believes will be useful in identifying persons who may be entitled to relief under this Agreement.

## XI. DURATION OF THE AGREEMENT

37. The Parties agree to file this Agreement as an exhibit to a joint motion to dismiss Defendants, pursuant to Fed. R. Civ. P. 41(a)(2), subject to reinstatement upon the United States' motion for the purpose of resolving a claim that any Defendant materially breached any provision of this Agreement. The motion to dismiss Defendants shall request that the Court retain jurisdiction to resolve any dispute under the Agreement.

38. Should the United States move to restore the Complaint to the active docket of the Court for purposes of resolution of a claim of breach, all Defendants consent to and agree not to

contest the United States' motion to restore, and consents to and agrees not to contest the exercise of personal jurisdiction over any Defendant by the Court.

39. If the Action is reinstated, Defendants expressly agree not to count the time during which this Agreement is in place, or use the terms or existence of this Agreement, to plead, argue or otherwise raise any defenses under theories of claim preclusion, issue preclusion, statute of limitations, estoppel, laches, or similar defenses.

40. Before moving to restore the Complaint to the active docket, the United States shall provide the relevant Defendant(s) notice of any asserted breach in writing. The Parties will endeavor in good faith to resolve informally any differences regarding interpretation of and compliance with this Agreement prior to bringing matters to the Court for resolution. Each Defendant will have up to thirty (30) days from the date of notice to cure the alleged breach.

41. In the event the United States reinstates the Action, and the Court finds a material breach of the Agreement, the United States may seek the following: 1) an order mandating specific performance of any term or provision in this Agreement; and 2) any additional relief that may be authorized by law or equity. Such remedies may include an order requiring performance and/or an award of any damages, costs, and reasonable attorneys' fees that may have been caused by the violation of the Agreement.

42. The effective date of this Agreement is the date the joint motion to dismiss the Defendants, pursuant to Fed. R. Civ. P. 41(a)(2), as set forth in the preceding Paragraph 37, is ordered by the Court.

43. This Agreement will be in effect for five years beginning on the effective date. The Court will retain continuing and exclusive jurisdiction throughout the term of this Agreement to enforce its terms.

44. Failure of the United States to insist on strict performance of any provision of this Agreement is not a waiver of the United States' rights or remedies or of any noncompliance by any Defendant with the terms of this Agreement.

45. This Agreement is binding on the Parties and their transferees, successors, heirs and assigns.

## XII. COMPLIANCE WITH THE AGREEMENT AND THE FAIR HOUSING ACT

46. Any time limits for performance imposed by this Agreement may be extended by mutual written agreement of the Parties. Any other modifications to the provisions of this Agreement must be approved by the Court.

47. The United States may monitor Defendants' compliance with this Agreement. Defendants will cooperate with the United States' monitoring of compliance.

48. Defendants will cooperate fully with the United States' efforts to monitor compliance with this Agreement by making policies, records including complaints, personnel, and any other reasonably requested information available to the United States.

49. If any Defendant engages in any future violation(s) of the Fair Housing Act, such violation(s) will constitute a "subsequent violation" under 42 U.S.C. § 3614(d)(1)(C)(ii).

## XIII. COSTS AND LITIGATION HOLDS

50. Except as provided in Paragraph 41, the United States and Defendants will bear their own costs and attorneys' fees associated with this litigation.

51. The Parties agree that, as of the effective date of this Agreement, litigation is not "reasonably foreseeable" concerning the matters described in this Agreement. If any party has implemented a litigation hold to preserve documents, electronically-stored information, or things related to the matters described above, that party is no longer required to maintain it. Nothing in

this Paragraph relieves any party of any other obligations under this Agreement, including Defendants' obligation to preserve documents under Section X.

Date: January 8, 2026

Respectfully submitted,

**For the United States:**

|  |  |
|---|---|
|  | HARMEET K. DHILLON<br>Assistant Attorney General<br>Civil Rights Division |
| DAVID C. WATERMAN<br>United States Attorney<br>Southern District of Iowa | CARRIE PAGNUCCO<br>Chief |
| /s/ Kristin Herrera<br>KRISTIN HERRERA<br>Assistant U.S. Attorney<br>Southern District of Iowa<br>210 Walnut Street<br>Suite 455<br>Des Moines, IA 50309<br>(515)473-9318<br>Email: kristin.herrera@usdoj.gov | /s/ Charla Jackson<br>AMIE MURPHY<br>Deputy Chief<br>CHARLA JACKSON<br>Trial Attorney<br>Housing and Civil Enforcement Section<br>Civil Rights Division<br>U.S. Department of Justice<br>950 Pennsylvania Avenue NW – 4CON<br>Washington, DC 20530<br>(202) 598-5634<br>Email: charla.jackson@usdoj.gov<br><br>Attorneys for Plaintiff<br>United States of America |

**For Defendants Kurt Willians and Gearhead Properties, LC:**

/s/ *Lynn M. Smith*
LYNN M. SMITH
Beecher, Field, Walker, Morris, Hoffman & Johnson, P.C.
620 Lafayette Street, Suite 300
Waterloo, IA 50703-0178
(319)234-1766
lsmith@beecherlaw.com

## APPENDIX A

<u>Full and Final Release of Claims</u>

In consideration for the parties' agreement to the terms of the Settlement Agreement entered into in the case of *United States v. Kurt Williams and Gearhead Properties, LC, 3:25-cv-00007 (*S.D. Iowa), and in consideration for the payment of $_____, I, _____, do hereby fully release and forever discharge the Defendants named in this lawsuit, as well as their insurers, attorneys, agents, employees, former employees, heirs, and executors from any and all fair housing claims based on the facts alleged in the Complaint in this lawsuit that I may have had against the Defendants for any of their actions or statements related to those claims through the date of the entry of the Settlement Agreement.

Executed this \_\_\_\_\_ day of _____, 20\_\_.

_____
Signature

_____
Print Name

_____
Home Address

_____
Home Address Continued

# APPENDIX B

Letter Regarding Landlord/Tenant Actions

[Month] [day], 20[ ]

**Re: [Aggrieved Person's name]**

To Whom it May Concern:

      On [date of landlord/tenant complaint filing], my client, [Defendants], or someone acting on my client's behalf, filed a landlord/tenant complaint against [Aggrieved Person's name] in [court name] [case number]. My client was the owner of the property in [year of rental] and at the time the landlord/tenant complaint was filed.

      On November 18, 2024, the United States of America filed a lawsuit against Kurt Williams and Gearhead Properties, LC in the United States District Court for the Southern District of Iowa alleging violations of the Fair Housing Act, 42 U.S.C. §§ 3601, *et seq.* As part of the resolution reached in that case, the United States determined that the landlord/tenant complaint referenced above was made in violation of the Fair Housing Act. Accordingly, as part of the resolution, my client was required to take any and all necessary steps to seek dismissal of the landlord/tenant complaint referenced above, and, if necessary, take any and all steps to vacate any adverse judgement obtained in the landlord/tenant action referenced above.

      To the extent that negative information exists regarding [Aggrieved Person]'s rental of [property street address] in [property city or town], [state], please disregard it. Such negative information may include: any judgment obtained in connection with the action referenced above, any information relating to late or missing rent payments, payments with non-sufficient funds, write-offs, collections actions, unpaid or late-paid utility bills; negative statements relating to the condition of the property during or at the end of [Aggrieved Person]'s tenancy; and any information related to alleged lease violations or damages to the property located at [property street address] during [Aggrieved Person]'s tenancy.

Sincerely,

[DEFENSE COUNSEL]